```
         IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```
                                *
EDWARD G. SHLIKAS,
                                *
     Plaintiff,                 *
                                *
         v.                     *       CIVIL NO.: WDQ-09-2806
                                *
SLM CORPORATION, *et al.*,      *
                                *
     Defendants.
                                *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Edward Shlikas, *pro se*, sued SLM Corporation[1] and the Department of Education ("DOE") for violating his due process rights under the United States Constitution and the Maryland Declaration of Rights. Pending are various pretrial motions.

---

[1] The Complaint named "SLM Corporation (Sallie Mae)" as a defendant. SLM Corporation is the holding company of Sallie Mae, Inc. *See* SLM's Mot. to Dismiss 1. The two appear to be separate legal entities. *Id*. Shlikas has brought these claims against Sallie Mae, Inc. in a separate action in this Court, *see Shlikas v. Sallie Mae, Inc.*, WDQ-06-2106. It appears that Shlikas intended to sue only SLM in this case, although he refers to SLM and Sallie Mae interchangeably in some of his briefs.

I.   Background

Between January 1989 and December 1996, Shlikas obtained five student loans totaling $29,125, which he has failed to repay.  *See* DOE Mot. for Summ. J., Exs. 1-5.  Sallie Mae, Inc. is the service agent for all the loans.  *Id*.  Three of the loans were guaranteed by United States Aid Funds ("USAF"); the other two were guaranteed by Great Lakes Higher Education Guarantee Corporation.  *Id*.  The DOE reinsured all the loans.[2]

Shlikas defaulted on the USAF loans on April 14, 2006 and the Great Lakes loans on April 17, 2006.  *Id*.  On August 4, 2006 and August 4, 2007,[3] Great Lakes notified Shlikas that the DOE would request that the Department of Treasury ("DOT") offset his loan debt against any federal payments--including income tax refunds--that he was entitled to receive in the future.  *Id*., Ex. 6 ("Loan Statement" and "Notice of Proposed Treasury Offset of Federal Income Tax Refund"); *see also* Jacqueline Fairbairn

---

[2] The DOE reinsured these loans under the Federal Family Education Loan Program ("FFELP")—Part B of the Higher Education Act of 1965 ("HEA"). *See* 20 U.S.C. § 1071 *et seq*. Under its reinsurance commitment, the DOE reimburses the guarantor a percentage of the losses in paying default claims to lenders. *See id*. § 1078(c).  After the DOE has paid its reinsurance commitment, the guarantor must collect from the debtor and remit payment to the DOE. *See id*. § 1078(c)(2)(A); 34 C.F.R. § 682.404(g).

[3] Shlikas does not "recall" or "have any record of receiving" the August 4, 2007 notice.  Shlikas Opp., Ex. 1 (Edward G. Shlikas Aff. ¶ 25, Mar. 29, 2010).

Aff. ¶ G, Nov. 23, 2009. USAF sent a similar notice on August 1, 2007. *Id*., Ex. 7.[4]

The notices explained how to avoid offset by making payment arrangements. *Id*., Exs. 6, 7. They also explained Shlikas's rights to review documents about his loans, object to the amount or existence of the loan, and have the guarantor review his objections. *Id*. The notices stated that Shlikas could request an in-person or telephone hearing on any objection. *Id*. If Great Lakes granted that request, an in-person hearing would be held in Madison, Wisconsin. *Id*., Ex. 6. USAF's in-person hearing would be in Fisher, Indiana. *Id*., Ex.7. If Shlikas's hearing request was denied, the guarantor would advise Shlikas of that decision, and whether it would accept his objections. *Id*. Requests to review documents were required to be submitted within 20 days of the notices. *Id*. Objections were to be filed within 65 days. *Id*. The notices advised that if Shlikas missed these deadlines, he could still review documents or file objections, but the DOE would proceed with its request for offset until he proved that the debt was not legally enforceable. *Id*.

---

[4] Although both parties have submitted the USAF's letter to Shlikas, neither has included the "enclosed Notice" to which the letter refers. The Court will give Shlikas the favorable assumption and assume that the Notice is a "Notice of Proposed Treasury Offset of Federal Income Tax Refund" identical to that included with the Great Lakes letters.

On April 10, 2008, Shlikas mailed Great Lakes[5] and USAF: (1) an objection to any offset; (2) demands for an "in-person hearing and trial by jury" in "an Article III court," "a Maryland State Court," and "the Circuit Court for Baltimore County"; and (3) a request to review documents about his loans and the guarantors' hearing procedures. *See* Compl., Exs. 2-8.[6] Neither Great Lakes nor USAF responded. Shlikas Aff. ¶ 16.

On May 8, 2008, the DOT notified Shlikas that it had applied his 2007 tax refund of $600 to his debt. Compl., Ex. 9. On April 24, 2009, the DOT notified Shlikas that the same had been done with his 2008 tax refund of $1541.00. *Id*., Ex. 10.

On September 25, 2009, Shlikas filed this Complaint in the District Court of Maryland for Baltimore County, alleging that the Defendants' offsets violated his due process rights under the United States Constitution and the Maryland Declaration of Rights. Paper No. 2. The Complaint sought compensatory damages in the amount of the 2007 and 2008 tax refunds and a declaratory judgment that Shlikas did not owe "Sallie Mae" or the DOE "any alleged debt." *Id*. The Defendants removed to this Court on the basis of federal question jurisdiction. Paper No. 1.

---

[5] Great Lakes denies receiving these documents. *See* Fairbairn Aff. ¶ G.

[6] Shlikas's opposition to the DOE's motion for summary judgment incorporates by reference the exhibits attached to his Complaint.

II. Analysis

    A. SLM's Motion to Dismiss or, in the Alternative, Quash Service

SLM has moved to dismiss or quash for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally." *Id*. But the "plain requirements for the means of effecting service may not be ignored." *Id*. If the plaintiff has failed to comply with Rule 4, the Court may dismiss the complaint or quash the service, thereby permitting the plaintiff to attempt to properly serve the defendant. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983).

Under Rule 4, a domestic corporation, such as SLM, must be served (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or (2) "by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is authorized by statute and the

statute so requires--by also mailing a copy of each to the defendant." *See* Fed. R. Civ. P. 4 (e),(h).

Under Maryland law:

> Service is made upon a corporation . . . by serving its resident agent, president, secretary, or treasurer. If the corporation . . . has no resident agent or if a good faith attempt to serve the resident agent, president, secretary, or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process.

Md. Rule 3-124(c).

Shlikas has twice attempted to serve SLM. He first attempted to do so by having a deputy sheriff deliver the summons and Complaint to Rand L. Gelber, Esq.--SLM's attorney in this case--at his office in Rockville, Maryland. Gelber has submitted an affidavit that he is not (1) the resident agent for SLM in Maryland, (2) an officer or director of SLM, or (3) otherwise authorized to receive service on SLM's behalf. Rand L. Gelber Aff. ¶ 3 (Nov. 5, 2009). Gelber has also averred that he has never advised Shlikas or anyone else that he was authorized to accept service for SLM. *Id*. ¶ 4.

Shlikas also mailed the summons and Complaint to what appears to be an SLM office in Reston, Virginia. *See* Paper No. 22. The mailing--which was sent by certified mail in accordance with Maryland Rule 3-121(a)--was addressed to "SLM Corporation

6

(Sallie Mae), c/o Person Authorized to Received Service of Process." *Id*. Shlikas has filed a copy of the return receipt indicating that the mailing was received by "S. Williams" on January 6, 2010. *Id*. Because "S. Williams" has not been identified, it is unclear whether SLM has been served in accordance with Rule 4 or Maryland law.

Notwithstanding this, it does appear that SLM has received actual notice, as it has participated in these proceedings.[7] Given SLM's participation and Shlikas's *pro se* status, dismissal is inappropriate. But because the "plain requirements for the means of effecting service may not be ignored," *O'Meara*, 464 F. Supp. 2d at 476, the Court will quash the service.[8]

B. Shlikas's Motions

1. Motion to Amend Complaint (Paper No. 36)

Shlikas has moved to amend his Complaint, but it is unclear what amendment he proposes. The motion fails to comply with Local Rule 103.6.c, which requires the moving party to identify the amendments by filing and serving "a copy of the amended

---

[7] In addition to its motion to dismiss under Rule 12(b)(5), SLM has moved to strike Shlikas's amended Complaint, Paper No. 27, and has opposed Shlikas's motion to join Collection Technology, Inc. ("CTI") and Great Lakes, Paper No. 48.

[8] Because the Court will quash service on SLM, its motion to strike Shlikas's amended Complaint, Paper No. 27, will be denied as moot, without prejudice to its renewal if service is properly made.

pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type."  Shlikas's motion does not comply with this requirement.  Accordingly, the motion to amend will be denied without prejudice.

    2. Motions for Joinder and to Serve a Supplemental Pleading (Paper Nos. 42 and 43)

Shlikas has moved to join--and to serve a supplemental pleading on--Great Lakes[9] and CTI as defendants.  Under Rule 20(a)(2), defendants may be joined in one action if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)-(B).  "The 'transaction or occurrence test' of the rule . . . permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding."  *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citation omitted).  "But Rule 20 does not authorize a plaintiff to add claims against different parties [that] present[] entirely different factual and legal issues."  *Sykes*

---

[9] As noted above, Great Lakes is the guarantor of two of Shlikas's loans.

*v. Bayer Pharms. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alteration in original). "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007).

Shlikas contends that Great Lakes is liable under essentially the same facts and legal theories as the DOE and SLM: he contends that Great Lakes's notice and review procedures after default violated procedural due process. These claims are "reasonably related" to the claims against the other Defendants in that they concern the sufficiency of the procedures that were employed before Shlikas's tax refunds were used to offset his loan debt; thus, Rule 20's transaction and occurrence test is satisfied. Because the claims are based on the legal theory he asserts against the other defendants, there will be common questions of law as to all defendants if Great Lakes is joined. Shlikas has satisfied Rule 20's requirements as to joinder of Great Lakes; his motion for joinder will be granted.

Shlikas's claims against CTI concern debt collection efforts (including repeated phone calls and dunning letters) that Shlikas alleges violated the Federal Fair Debt Collection

9

Practices Act ("FDCPA") and the Maryland Consumer Debt Collection Act ("MCDCA"). *See* Mot. to Join, Ex. A (Edward G. Shlikas Aff. ¶¶ 1-15 (Apr. 15, 2010)). The facts alleged in Shlikas's motion occurred long after the filing of this suit and are not related to the conduct at issue in this case. Further, Shlikas proposes to sue CTI on theories that would not be common to all defendants: none of the other defendants is alleged to have engaged in harassment prohibited by the FDCPA and MCDCA. Accordingly, Shlikas's motion to join CTI will be denied.

Because CTI may not be joined in this suit, Shlikas's motion to serve a supplemental pleading on it must also be denied. Although Shlikas may join Great Lakes, a supplemental pleading is not the proper way to do so. Under Rule 15(d), "upon reasonable notice and upon such terms as are just, [the Court may] permit [a] party to serve a supplemental pleading setting forth *transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented*." Fed. R. Civ. P. 15(d) (emphasis added). Shlikas's claims against Great Lakes are based on occurrences long before the filing of this suit; thus, his motion to file a supplemental pleading must be denied. Shlikas may join Great Lakes by moving to file an *amended complaint* that meets the requirements of Rules 15(a)-(c) and the relevant Local Rules.

3. Motion for Preliminary Injunction (Paper No. 47)

Shlikas seeks to enjoin the DOE and CTI--which has been retained by the DOE to assist in the collection of Shlikas's debt--from (1) "issuing an administrative wage garnishment order to his employer," (2) "making any more telephone calls to [Shlikas], [Shlikas's] employer, relatives, neighbors, friends or other third parties regarding the collection of alleged debts," (3) and "destroying, altering, or purging any recorded telephone calls to [Shlikas] or other third parties . . . [or] communication logs, memorandums, emails, notes or any other information [about] [Shlikas]." Mot. Prel. Inj. 1-2.[10]

To the extent that the motion seeks relief against CTI, it must be denied because CTI is not a party to this suit and has not been served with the motion or any other filings.

The relief sought against the DOE must be denied because Shlikas has not made--or attempted--the showing required for preliminary injunctive relief. A party seeking a preliminary injunction must show that: (1) he is likely to succeed on the merits of his claims, (2) he is likely to suffer irreparable

---

[10] The DOE's Opposition, filed on April 30, 2010, was captioned (for reasons that are unclear) as a "Motion to Dismiss Plaintiff's Motion for Preliminary Injunction and for Sanctions." Paper No. 47. Because Shlikas's motions for a preliminary injunction and for sanctions will denied, the DOE's "motion to dismiss" these motions will be denied as moot.

11

harm absent preliminary relief, (3) the balance of equities tips in favor, and (4) an injunction is in the public interest. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (*quoting Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)). As Shlikas has not made the required showing on any of these factors, his motion for a preliminary injunction must be denied.

    4. Motion for Sanctions (Paper No. 45)

Shlikas also requests that the DOE be sanctioned for the conduct of CTI, which he alleges is the DOE's "agent." In opposition,[11] the DOE has provided the affidavit of Patricia A.

---

[11] The DOE has filed two responses to Shlikas's motion for sanctions. The first, filed on April 30, 2010, was the "Motion to Dismiss Plaintiff's Motion for Preliminary Injunction and for Sanctions." Paper No. 47. In that "motion," the DOE asserted that it did not hold any of Shlikas's loans and had not retained CTI to assist with collection of Shlikas's debt. Shlikas filed an "opposition" to this "motion" on May 17, 2010, which contained documents indicating that the DOE had recently become the holder of two of his loans. Paper No. 49.

On July 7, 2010, the DOE filed a brief captioned as its "Response to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction and Motion for Sanctions." Paper No. 57. This memorandum is essentially a surreply that addresses Shlikas's evidence of the assignment of loans to the DOE by conceding that its original "motion" had incorrectly asserted that (1) the DOE did not hold any of Shlikas's loans and (2) CTI has not been retained by the DOE. *Id*. Although the DOE now admits that it holds two loans and has retained CTI, it maintains that a sanction is inappropriate.

Gwaltney, a Contracting Officer for DOE, which states that CTI is an "independent contractor employed by DOE for the purpose of collecting [loan debts]." Paper No. 57, Ex. A. (Patricia A. Gwaltney Aff. ¶¶ 1-2). Shlikas offers no evidence that the relationship between the DOE and CTI was that of principal and agent (such as the DOE right to control CTI's actions) or any legal authority that CTI's alleged harassment should be imputed to the DOE. Given this showing, a sanction is inappropriate; Shlikas's motion will be denied.

C. The DOE's Motion for Summary Judgment (Paper No. 28)[12]

The DOE seeks summary judgment on Shlikas's claims.

Shlikas appears to contend that the offsets were made in violation of procedural due process because the procedures provided by the DOE and the guarantors (whom Shlikas alleges were state actors) did not afford him a "meaningful opportunity to be heard."

1. Standard of Review under Rule 56

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to

---

[12] On March 16, 2010, Shlikas moved for an extension of time to file his opposition to the DOE's motion for summary judgment. Paper No. 38. He asserts that he attempted to obtain the consent of the DOE's counsel, but counsel did not respond to his email. *Id*. As the DOE has not opposed Shlikas's motion for an extension, it will be granted, and his opposition considered.

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

2. Procedural Due Process

Although they are somewhat unclear, Shlikas's due process claims appear to be about the procedures employed by the Defendants in obtaining an "administrative offset" of his federal student loan debt. Procedural due process under the Fifth Amendment to the United States Constitution requires the

14

government to provide "notice and an opportunity to be heard" before depriving individuals of property. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993).[13]

The DOE may collect a debt by offsetting certain federal payments to which the debtor may be entitled, such as income tax refunds, through the Treasury Offset Program ("TOP"). *See* 26 U.S.C. § 6402; 31 U.S.C. § 3720A. To refer a debt for collection through the TOP, the DOE must: (1) provide the debtor with notice of the proposed offset and an opportunity for a hearing to dispute the debt and (2) certify to the DOT that these steps have been completed and qualify for collection by offset. 31 U.S.C. §§ 3716(a), (c)(6); 31 U.S.C. § 3720A(a)-(b); 31 C.F.R. §§ 285.2, 285.4. The DOT then offsets all or a portion of the payment, pays the offset amount to the DOE, and disburses any remaining portion to the payee. 31 C.F.R. §§ 285.4(c) and (h).

The DOE has promulgated regulations governing the collection of debt through the TOP. These regulations require that the debtor be provided written notice before the referral that includes information about: (1) the nature and amount of the debt owed; (2) the DOE's intent to offset; and (3) the

---

[13] The standard is the same under Article 24 of the Maryland Declaration of Rights. *See VNA Hospice v. Dep't of Health & Mental Hygiene*, 406 Md. 584, 961 A.2d 557, 568-69 (Md. 2008).

debtor's opportunity to inspect and copy relevant records, (4) obtain a review within the DOE of the existence or amount of the debt, and (5) enter into a written agreement to repay the debt. 34 C.F.R. § 30.22(b)(3); *see also* 34 C.F.R. § 682.410(b)(5)(vi) (applying these requirements to student loan guarantors). The debtor must also be made aware of the availability of an administrative review or hearing upon request. 34 C.F.R. § 30.24.

Compliance with the statutes and regulations governing offsets satisfies procedural due process. *See, e.g.*, *McCarty v. Astrue*, 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007).[14] The DOE also asserts that this regime "provid[es] due process rights" to the debtor. *See* Mot. Summ. J. 14. Notwithstanding this assertion, the DOE has not addressed Shlikas's due process claim in its motion for summary judgment or provided evidence of compliance with the procedural requirements for the offset. The DOE has shown that notice was sent to Shlikas, but nothing in record shows that Shlikas's objections and requests for documents were considered or that he was advised of a decision on those matters. Accordingly, the Court must deny the DOE's motion for summary judgment on Shlikas's due process claims.

---

[14] *Cf. Johnson v. United States Dep't of Treasury*, 300 Fed. Appx. 860, 862 (11 th Cir. 2008) (TOP's statutory and regulatory requirements "ensure that the debtor receives due process").

16

3. Right to Jury Trial

The DOE also moves for summary judgment on Shlikas's right to a jury trial in this case and on what may be Shlikas's claim that the offsets violated his right to a jury trial. Shlikas's Seventh Amendment claims are unclear. It appears that he demanded that the DOE and the guarantors give him a jury trial before offsetting his debt, *see* Compl. ¶¶ 3-4, but the Complaint only alleges that the offsets violated procedural due process, *see id.* ¶¶ 19-20.

As the Government notes, other papers filed by Shlikas--including his Opposition to the Motion for Summary Judgment--suggest that he believes the only issue before the Court is whether he is entitled to a jury trial in this case. *See* Opp. to Mot. Summ. J. 16-17. The DOE contends that it is entitled to summary judgment on Shlikas's claim that it (and its agents, the guarantors) violated his Seventh Amendment rights through the offset program and on Shlikas's entitlement to a jury trial in this case.

Rule 56 permits summary judgment only as to "all or part of [a party's] *claim*." Fed. R. Civ. P. 56(b). Summary judgment is not the appropriate procedural vehicle for determining Shlikas's right to a jury trial in this case. Accordingly, to the extent that the DOE seeks summary judgment on that issue, its motion

17

will be denied.  To the extent that the DOE seeks summary judgment on a claim by Shlikas that the Defendants violated his Seventh Amendment rights, its motion must be denied because Shlikas's Complaint contains no such claim.

III.  Conclusion

For the reasons stated above, SLM's motion to quash will be granted and its motion to strike will be denied without prejudice.  Shlikas's motions to amend, to serve a supplemental pleading, for a preliminary injunction, and for sanctions will be denied; his motion for an extension of time to oppose the DOE's motion for summary judgment will be granted; and his motion for joinder will be granted as to Great Lakes and denied as to CTI.  The DOE's motion for summary judgment will be denied, and its "Motion to Dismiss Plaintiff's Motion for Preliminary Injunction and Motion for Sanctions will be denied as moot.  A separate Order follows.


August 25, 2010                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge