IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EDWARD G. SHLIKAS,

    Plaintiff,

        v.

UNITED STATES DEPARTMENT
OF EDUCATION,

    Defendant.

CIVIL NO.: WDQ-09-2806

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM OPINION

Edward G. Shlikas, *pro se*, sued the United States
Department of Education ("DOE") and SLM Corporation for
violating his due process rights under the United States
Constitution and the Maryland Declaration of Rights.  For the
following reasons, the DOE's motion for summary judgment will be
denied.

I.  Background[1]

Between January 1989 and December 1996, Shlikas obtained
five student loans totaling $29,125, which he has failed to
repay.  *See* ECF No. 28 Attachs. 2-6.  Sallie Mae, Inc. is the
service agent for all the loans.  *Id*.  Three of the loans were
guaranteed by United States Aid Funds ("USAF"); the other two

---

[1] In reviewing a motion for summary judgment, the non-movant's
evidence "is to be believed, and all justifiable inferences are
to be drawn in [his] favor."  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986).

were guaranteed by Great Lakes Higher Education Guarantee
Corporation.  *Id.*  The DOE reinsured all the loans.[2]  ECF No. 90-
1 at 10.

Shlikas defaulted on the USAF loans on April 14, 2006 and
the Great Lakes loans on April 17, 2006.  *Id.*  On August 4, 2006
and August 4, 2007, Great Lakes notified Shlikas that the DOE
would request that the Department of Treasury ("DOT") offset his
loan debt against any federal payments--including income tax
refunds--that he was entitled to receive in the future.[3]  ECF No.
28-7 at 18-29 ("Loan Statement" and "Notice of Proposed Treasury
Offset of Federal Income Tax Refund"); *see also* ECF No. 28-7 at
1 ¶G (Jacqueline Fairbairn Aff., Nov. 23, 2009).  USAF sent a
similar notice on August 1, 2007.  ECF No. 28-8.[4]  Both letters

---

[2] The DOE reinsured these loans under the Federal Family
Education Loan Program ("FFELP")—Part B of the Higher Education
Act of 1965 ("HEA").  *See* 20 U.S.C. § 1071 *et seq.*  Under its
reinsurance commitment, the DOE reimburses the guarantor a
percentage of the losses in paying default claims to lenders.
*See id.* § 1078(c).  After the DOE has paid its reinsurance
commitment, the guarantor must collect from the debtor and remit
payment to the DOE. *See id.* § 1078(c)(2)(A); 34 C.F.R. §
682.404(g).

[3] Shlikas does not "recall" or "have any record of receiving" the
August 4, 2007 notice.  ECF No. 39-1 ¶25.

[4] Although both parties have submitted the USAF's letter to
Shlikas, neither has included the "enclosed Notice" to which the
letter refers.  The Court will assume that the Notice is a
"Notice of Proposed Treasury Offset of Federal Income Tax
Refund" identical to that included with the Great Lakes letters.

stated that the DOE "intend[ed] to offset" the funds.  *See* ECF
No. 2-1.

    The notices explained how to avoid offset by making payment
arrangements.  ECF Nos. 28-7, 28-8.  They also explained
Shlikas's rights to review documents about his loans, object to
the amount or existence of the loan, and have the guarantor
review his objections.  *Id.*  The notices stated that Shlikas
could request an in-person or telephone hearing on any
objection.  *Id.*  If Great Lakes granted that request, an in-
person hearing would be held in Madison, Wisconsin.  ECF No. 28-
7.  USAF's in-person hearing would be in Fisher, Indiana.  ECF
No. 28-8.  If Shlikas's hearing request was denied, the
guarantor would advise Shlikas of that decision, and whether it
would accept his objections.  ECF Nos. 28-7, 28-8.  Requests to
review documents were required to be submitted within 20 days of
the notices.  *Id.*  Objections were to be filed within 65 days.
*Id.*  The notices advised that if Shlikas missed these deadlines,
he could still review documents or file objections, but the DOE
would proceed with its request for offset until he proved that
the debt was not legally enforceable.  *Id.*

    On April 10, 2008, Shlikas mailed Great Lakes and USAF: (1)
an objection to any offset; (2) demands for an "in-person
hearing and trial by jury" in "an Article III court," "a
Maryland State Court," and "the Circuit Court for Baltimore

3

County"; and (3) a request to review documents about his loans and the guarantors' hearing procedures.[5]   *See* ECF No. 2 Attachs. 2-8.[6]   Neither Great Lakes nor USAF responded.   ECF No. 39-1 ¶16.

On May 8, 2008, the DOT notified Shlikas that it had applied his 2007 tax refund of $600 to his debt.   ECF No. 2-9. On April 24, 2009, the DOT notified Shlikas that the same had been done with his 2008 tax refund of $1541.00.   ECF No. 2-10.

On September 25, 2009, Shlikas filed a complaint in the District Court of Maryland for Baltimore County, alleging that the defendants' offsets violated his due process rights under the United States Constitution and the Maryland Declaration of Rights.   ECF No. 2.   The defendants removed to this Court on the basis of federal question jurisdiction.   ECF No. 1.

On December 2, 2009, Great Lakes assigned Shlikas's accounts to DOE.   ECF No. 90-1 at 4.

Shlikas filed an amended complaint on January 4, 2010, again alleging that the tax offsets violated his right to procedural due process.   ECF No. 18.   He sought return of the $2,141 in tax refunds, declarations that he did not owe the

---

[5] Great Lakes denied receiving these documents.   *See* ECF No. 28-7 ¶G.

[6] Shlikas's opposition to the DOE's first motion for summary judgment incorporated by reference the exhibits attached to his complaint.   ECF No. 39.

4

defendants any money and 31 U.S.C. § 3716 was unconstitutional, and expenses for the suit.  *Id.* ¶¶33-36.

On August 25, 2010, the Court quashed service on SLM[7] and denied summary judgment for the DOE because Shlikas had attempted to serve it by delivering the summons and complaint to SLM's attorney in this case, and mailing them to an SLM office in Virginia.  ECF No. 59; ECF No. 58 at 6.  The Court held that summary judgment was not appropriate because there was no evidence "that Shlikas's objections and requests for documents were considered or that he was advised of a decision on those matters."  ECF No. 58 at 16.

Using its authority under 31 U.S.C. § 3720D, from July 7, 2010, to July 20, 2011, the DOE garnished 15 per cent of Shlikas's wages to recover some of the debt.  ECF No. 90-1 at 6.

On August 2, 2011, USAF assigned Shlikas's loans to the DOE.  ECF No. 90-1 at 4.  Later that month, the DOE stopped garnishing Shlikas's wages, granted him a hearing and allowed him to file objections to the 2007 and 2008 tax refund offsets. ECF No. 90-3 at 1, 14.  On November 28, 2011, it concluded that Shlikas's "evidence did not support [his] objection [to the tax refund offsets, and] this debt is enforceable by garnishment." Because Shlikas was suing the DOE, however, the DOE did not

---

[7] Shlikas's later attempt to serve SLM was also quashed, and the complaint against SLM was dismissed, in May 2011.  ECF No. 75.

resume garnishing his wages.  *Id.* at 13.  The DOE reached the same conclusion on March 7, 2012, when it reconsidered its November opinion.  ECF No. 97-1.

On December 13, 2011, the DOE moved for summary judgment, arguing that the November 28 DOE decision satisfied the Administrative Procedure Act ("APA") standard for setting aside unlawful agency actions.  ECF No. 90-1 at 1.  On January 30, 2012, Shlikas opposed the motion, arguing that there were disputes of material fact, and the November 2011 DOE decision did not address his due process claim, and violated his right to procedural due process.  ECF No. 94 at 5-10.

II.  Analysis

A.  Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[8]  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby,*

---

[8] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

*Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact

is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable

to . . . the nonmovant, and draw all reasonable inferences in

[its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290

F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the

"affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial,"

*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526

(4th Cir. 2003) (citation and internal quotation marks omitted).

B.    DOE's Motion for Summary Judgment

The DOE argues that the APA standards govern its motion for

summary judgment.  ECF No. 90-1 at 6.  However, the Court must

consider whether the tax refund offset satisfied Shlikas's

procedural due process rights, as he has alleged that it did

not.  *See* ECF No. 18.[9]

Procedural due process under the Fifth Amendment to the

United States Constitution requires the government to provide

"notice and an opportunity to be heard" before depriving

individuals of property.  *United States v. James Daniel Good*

---

[9] The amended complaint, which was filed before the DOE's 2011
hearing, does not challenge the result or reasoning of that
hearing.  ECF No. 18 at 3-8.

*Real Prop.*, 510 U.S. 43, 48 (1993).[10]  Shlikas has the right to a meaningful opportunity to be heard, but a "trial-type hearing is not required." *Higgins v. Spellings*, 663 F. Supp. 2d 788, 796 (W.D. Mo. 2009).[11]

   1. The Treasury Offset Program

  The Secretary of the DOE may collect a debt by offsetting certain federal payments to which the debtor may be entitled, such as income tax refunds, through the Treasury Offset Program ("TOP").  *See* 26 U.S.C. § 6402; 31 U.S.C. § 3720A.  To refer a debt for collection through the TOP, the DOE must: (1) provide the debtor with notice of the proposed offset and an opportunity for a hearing to dispute the debt and (2) certify to the DOT that these steps have been completed and qualify for collection by offset.  31 U.S.C. §§ 3716(a), (c)(6), 3720A(a)-(b); 31 C.F.R. §§ 285.2, 285.4. The DOT then offsets all or a portion of the payment, pays the offset amount to the DOE, and disburses any remaining portion to the payee. 31 C.F.R. §§ 285.4(c) and (h).

  The DOE has promulgated regulations governing the collection of debt through the TOP.  These regulations require that the debtor be provided written notice before the referral

---

[10] The standard is the same under Article 24 of the Maryland Declaration of Rights.  *See VNA Hospice v. Dep't of Health & Mental Hygiene*, 406 Md. 584, 961 A.2d 557, 568-69 (Md. 2008).
[11] Thus, the DOE would not have to grant Shlikas's requests for a jury trial in an Article III court.  *See* ECF No. 94 at 10-11.

that includes information about: (1) the nature and amount of the debt owed; (2) the DOE's intent to offset; and (3) the debtor's opportunity to inspect and copy relevant records, (4) obtain a review within the DOE of the existence or amount of the debt, and (5) enter into a written agreement to repay the debt. 34 C.F.R. § 30.22(b)(3); *see also* 34 C.F.R. § 682.410(b)(5)(vi) (applying these requirements to student loan guarantors).  The debtor must also be made aware of the availability of an administrative review or hearing upon request.  *See* 34 C.F.R. §§ 30.22(b)(3), 30.24, 682.410(b)(5)(vi)(G)-(H).  Compliance with TOP statutes and regulations governing offsets satisfies procedural due process.  *See, e.g.*, *McCarty v. Astrue*, 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007).

## 2.    Pre-Referral Procedures

The DOE suggests that it did not acquire Shlikas's debt until after the second TOP seizure.  *See* ECF No. 90-1 at 3; ECF No. 97 at 4.  The undisputed evidence is that Shlikas had, and took, an opportunity to be heard on the TOP referral in 2011, four years after the debt was referred to TOP.  ECF No. 90-3 at 4-17.

The DOE contends that, as a matter of law, it did not deprive Shlikas of property in 2007 because the guarantors, not the DOE, held the debt and instituted the TOP referral.  ECF No. 97 at 4-5.  Even if the DOE did not own the loans in 2007, it

would not be entitled to summary judgment on that ground.  As
the DOE recognized in its first motion for summary judgment,
Congress "authoriz[ed] Education to use Treasury offset and . .
. requir[ed] Education to hear and decide debtor objections to
offset";[12] private guarantors lack statutory authority to refer
debts to TOP.[13]  Only the DOE could refer Shlikas's debt to TOP,
and the DOE was responsible for ensuring that Shlikas received
the opportunity to be heard on the referral, and protecting his
right to procedural due process as required by the regulations.
*See* 34 C.F.R. § 30.22(b)(3).  That the DOE acquired the debt
after it was referred to TOP does not absolve it of responsibil-
ity for complying with due process when it referred Shlikas's
debt to TOP.

     3.   Effect of the 2011 Hearing

     The DOE contends that the November 2011 DOE decision, and
March 2012 denial of reconsideration of that decision, afforded

_____

[12] ECF No. 28-1 at 14.

[13] 31 U.S.C. §§ 3716 (authorizing "the head of an executive,
judicial, or legislative agency" to collect claims by
administrative offset); 31 U.S.C. § 3720A (authorizing Secretary
of the Treasury to offset debts "owed" to a "Federal agency";
requiring Federal agency to provide debtor notice and
opportunity to dispute grounds for offset); 34 C.F.R. §
30.22(b)(3) (the Secretary of Education provides debtors with
the required notice and opportunity for hearing before referring
to TOP); *see also Johnson v. United States Dep't of Treasury*,
300 F. App'x 860, 862 (11th Cir. 2008) (TOP and regulations
require the Secretary of creditor agency to "ensure that the
debtor receives due process").

Shlikas all the procedural rights to which he was entitled, and
made up for any lost protections in 2007. *See* ECF No. 4. The
Due Process clause protects the "opportunity . . . granted at a
meaningful time . . . for a hearing." *Boddie v. Connecticut*,
401 U.S. 371, 378 (1971). Except in extraordinary circum-
stances, an after-the-fact hearing does not correct a depriv-
ation of the right to be heard before property is taken. *Id.*[14]

Though it does not correct any deprivation of Shlikas's
procedural due process rights in 2007, a reasonable post-hearing
decision that referral to TOP was appropriate will affect
Shlikas's damages if he succeeds on his claim, as he may be
limited to an award of nominal damages. *See Farrar v. Hobby*,

---

[14] *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437
(1982) ("[A]bsent the necessity of quick action by the State or
the impracticality of providing any predeprivation process, a
post-deprivation hearing . . . would be constitutionally
inadequate." (internal quotation marks and citations omitted));
*Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Because the right to
procedural due process is 'absolute' in the sense that it does
not depend upon the merits of a claimant's substantive
assertions, and because of the importance to organized society
that procedural due process be observed, we believe that the
denial of procedural due process should be actionable for
nominal damages without proof of actual injury." (internal
citations omitted)). In rare cases, the public interest in
swift action may substantially outweigh a private interest in
retaining property until after the benefit of a hearing, *see
Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), but generally,
the deprivation of property must "be *preceded* by notice and
opportunity for hearing." *Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532, 542 (1985) (*quoting Mullane v. Central Hanover
Bank & Trust Co.*, 339 U.S. 306, 313 (1950), and *citing Mathews*,
424 U.S. at 335).

506 U.S. 103, 112 (1992).[15]  This is because the remedy for a
procedural due process violation is "a constitutionally correct
. . . procedure."  *Stone v. F.D.I.C.*, 179 F.3d 1368, 1377 (Fed.
Cir. 1999).  If the November DOE decision, and March denial of
reconsideration, were "constitutionally correct," Shlikas will
not be entitled to another hearing, but he may be due nominal
damages.  *Farrar*, 506 U.S. at 112.

As the DOE is not entitled to summary judgment, the Court
will not reach the question of the constitutional soundness of
the 2011 hearing and decision, or identify an appropriate
remedy.[16]

---

[15] "[T]he denial of procedural due process should be actionable
for nominal damages without proof of actual injury."  *Farrar*,
506 U.S at 112 (internal quotation marks omitted).  The Due
Process Clause "creates an independent right to notice and a
hearing in the context of . . . deprivations of property rights
without respect to the underlying merits of a case"; thus, the
harmless error doctrine may not be "used as a shield against
procedural due process claims."  *Norton v. Town of Islip*, 239 F.
Supp. 2d 264, 271 (E.D.N.Y.), *aff'd*, 77 F. App'x 56 (2d Cir.
2003).

[16] The Court will also not consider whether the November 2011 and
March 2012 decisions were arbitrary and capricious, because the
amended complaint does not seek review of the agency decision
for unreasonableness, it argues only that the process afforded
Shlikas before the DOE referred his debts to TOP was constitu-
tionally insufficient.  *See* ECF No. 18.  Accordingly, the DOE's
arguments about the decisions' ability to withstand review under
the Administrative Procedure Act, *see* ECF No. 90-1 at 5-10, are
irrelevant.

III. Conclusion

For the reasons stated above, the DOE's motion for summary judgment will be denied.

_____5/31/12_____
Date

William D. Quarles, Jr.
United States District Judge