IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EDWARD G. SHLIKAS,

    Plaintiff,

       v.                    CIVIL NO.: WDQ-09-2806

UNITED STATES DEPARTMENT
OF EDUCATION,

    Defendant.

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Edward G. Shlikas, *pro se*, sued the United States
Department of Education ("DOE") and SLM Corporation for due
process violations. Pending are Shlikas's and the DOE's motions
for summary judgment. Also pending is Shlikas's motion for an
extension of time to file a response. For the following reasons
Shlikas's and the DOE's motions for summary judgment will be
granted in part and denied in part. Shlikas's unopposed motion
for extension of time will be granted.

I.    Background[1]

Between January 1989 and December 1996, Shlikas obtained
five student loans totaling $29,125.00, which he has failed to

---

[1] On cross motions for summary judgment, "each motion [is]
considered individually, and the facts relevant to each [are]
viewed in the light most favorable to the non-movant." *Mellen
v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

repay. *See* ECF Nos. 28-2 to 28-6. Sallie Mae, Inc.[2] is the service agent for all the loans. *Id.* Three of the loans were guaranteed by United States Aid Funds ("USAF"); the other two were guaranteed by Great Lakes Higher Education Guarantee Corporation ("Great Lakes"). *Id.* The DOE reinsured all the loans.[3] ECF No. 90-1 at 10.

Shlikas defaulted on the USAF loans on April 14, 2006 and the Great Lakes loans on April 17, 2006. *Id.* On August 4, 2006 and August 4, 2007, Great Lakes notified Shlikas that the DOE would request that the Department of Treasury ("DOT") offset his loan debt against any federal payments--including income tax refunds--that he was entitled to receive in the future.[4] ECF No. 28-7 at 18-29 ("Loan Statement" and "Notice of Proposed Treasury Offset of Federal Income Tax Refund"); *see also* ECF No. 28-7 at 1 ¶ G (Jacqueline Fairbairn Aff., Nov. 23, 2009). USAF sent a

---

[2] Sallie Mae, Inc. is a subsidiary of SLM. *See* ECF No. 58 at 1 n.1.

[3] The DOE reinsured these loans under the Federal Family Education Loan Program ("FFELP")—Part B of the Higher Education Act of 1965 ("HEA"). *See* 20 U.S.C. § 1071 *et seq.* Under its reinsurance commitment, the DOE reimburses the guarantor a percentage of the losses in paying default claims to lenders. *See id.* § 1078(c). After the DOE has paid its reinsurance commitment, the guarantor must collect from the debtor and remit payment to the DOE. *See id.* § 1078(c)(2)(A); 34 C.F.R. § 682.404(g).

[4] Shlikas does not "recall" or "have any record of receiving" the August 4, 2007 notice. ECF No. 39-1 ¶ 25.

similar notice on August 1, 2007. ECF No. 28-8.[5] Both letters stated that the DOE "intend[ed] to offset" the funds. *See* ECF No. 2-1.

The notices explained how to avoid offset by making payment arrangements. ECF Nos. 28-7, 28-8. They also explained Shlikas's rights to review documents about his loans, object to the amount or existence of the loan, and have the guarantor review his objections. *Id.* The notices stated that Shlikas could request an in person or telephone hearing on any objection. *Id.* If Great Lakes granted that request, an in person hearing would be held in Madison, Wisconsin. ECF No. 28-7. USAF's in person hearing would be in Fisher, Indiana. ECF No. 28-8. If Shlikas's hearing request was denied, the guarantor would advise Shlikas of that decision, and whether it would accept his objections. ECF Nos. 28-7, 28-8. Requests to review documents were required to be submitted within 20 days of the notices. *Id.* Objections were to be filed within 65 days. *Id.* The notices advised that if Shlikas missed these deadlines, he could still review documents or file objections, but the DOE would proceed with its request for offset until he proved that the debt was not legally enforceable. *Id.*

---

[5] Although both parties have submitted the USAF's letter to Shlikas, neither has included the "enclosed Notice" to which the letter refers. The Court will assume that the Notice is a "Notice of Proposed Treasury Offset of Federal Income Tax Refund" identical to that included with the Great Lakes letters.

3

On April 10, 2008, Shlikas mailed Great Lakes and USAF: (1) an objection to any offset; (2) demands for an "in person hearing and trial by jury" in "an Article III court," "a Maryland State Court," and "the Circuit Court for Baltimore County"; and (3) a request to review documents about his loans and the guarantors' hearing procedures.[6] *See* ECF No. 2-2 to 2-8. Neither Great Lakes nor USAF responded. ECF No. 39-1 ¶ 16.

On May 8, 2008, the DOT notified Shlikas that it had applied his 2007 tax refund of $600.00 to his debt. ECF No. 2-9. On April 24, 2009, the DOT notified Shlikas that the same had been done with his 2008 tax refund of $1541.00. ECF No. 2-10.

On September 25, 2009, Shlikas filed a complaint in the District Court of Maryland for Baltimore County, alleging that the defendants' offsets violated his due process rights under the United States Constitution and the Maryland Declaration of Rights. ECF No. 2. The defendants removed to this Court on the basis of federal question jurisdiction. ECF No. 1.

On December 2, 2009, Great Lakes assigned Shlikas's accounts to DOE. ECF No. 90-1 at 4.

On January 4, 2010, Shlikas filed an amended complaint, again alleging that the tax offsets violated his right to

---

[6] Great Lakes denied receiving these documents. *See* ECF No. 28-7 ¶ G.

procedural due process. ECF No. 18. He sought return of the $2,141.00 in tax refunds, declarations that he did not owe the defendants any money and the Treasury Offset Program ("TOP") under 31 U.S.C. § 3716 was unconstitutional, and expenses for the suit. *Id.* ¶¶ 33-36.

On August 25, 2010, the Court quashed service on SLM[7] and denied summary judgment for the DOE because Shlikas had attempted to serve it by delivering the summons and complaint to SLM's attorney in this case, and mailing them to an SLM office in Virginia. ECF No. 59; ECF No. 58 at 6. The Court held that summary judgment was not appropriate because there was no evidence "that Shlikas's objections and requests for documents were considered or that he was advised of a decision on those matters." ECF No. 58 at 16.

Using its authority under 31 U.S.C. § 3720D, from July 7, 2010, to July 20, 2011, the DOE garnished 15 percent of Shlikas's wages to recover some of the debt. ECF No. 90-1 at 6.

On August 2, 2011, USAF assigned Shlikas's loans to the DOE. ECF No. 90-1 at 4. Later that month, the DOE stopped garnishing Shlikas's wages, granted him a hearing and allowed him to file objections to the 2007 and 2008 tax refund offsets. ECF No. 90-3 at 1, 14. On November 28, 2011, it concluded that

---

[7] Shlikas's later attempt to serve SLM was also quashed, and the complaint against SLM was dismissed, in May 2011. ECF No. 75.

Shlikas's "evidence did not support [his] objection [to the tax refund offsets, and] this debt is enforceable by garnishment," and the remaining debt included $27,364.55 in principal and $301.44 in accrued interest.[8] *Id.* at 13. Because Shlikas was suing the DOE, however, the DOE did not resume garnishing his wages. *Id.* at 13. The DOE reached the same conclusion on March 7, 2012, when it reconsidered its November opinion. ECF No. 97-1.

On June 1, 2012, the Court denied the DOE's motion for summary judgment. ECF No. 99. The DOE interpreted the Court's memorandum opinion as stating that Shlikas's due process rights had been violated and refunded Shlikas the $5,098.00 that had been offset.[9]

On August 14, 2012, Shlikas moved for summary judgment. ECF No. 109. On August 15, 2012, the DOE moved for summary judgment. ECF No. 110. That day, the DOE answered, ECF No. 111, and moved to stay discovery, ECF No. 112. The next day, the Court granted the motion to stay. ECF No. 113.

On August 31, 2012, the DOE responded to Shlikas's motion. On September 4, 2012, Shlikas moved for an extension of time to

[8] The decision noted that interest would continue to accrue on the unpaid principal. ECF No. 90-3 at 13.

[9] Although the DOE has not submitted evidence showing that the $5,098.00 was actually refunded, Shlikas has conceded that he received it on July 24, 2012. *See* ECF Nos. 109 at 12, 117 at 7; *cf.* ECF No. 110-2 (listing offsets).

6

September 24, 2012, to file his response.[10]  ECF No. 116.  On

September 24, 2012, Shlikas filed his response.  ECF No. 117.

II.  Analysis

A.  Legal Standard

The Court "shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).[11]  In considering the motion, the judge's function
is "not . . . to weigh the evidence and determine the truth of
the matter but to determine whether there is a genuine issue for
trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249
(1986).  A dispute about a material fact is genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most
favorable to . . . the nonmovant and draw all reasonable
inferences in [its] favor," *Dennis v. Columbia Colleton Med.
Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court
must abide by the "affirmative obligation of the trial judge to

---

[10] The DOE did not oppose this motion, and it will be granted as
unopposed.

[11] Rule 56(a), which "carries forward the summary-judgment stan-
dard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment."  Fed.
R. Civ. P. 56 advisory committee's note.

7

prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B.    Shlikas's Motion

Shlikas asserts that he is entitled to summary judgment on each claim. ECF No. 109.

1.    Amount of Debt

Shlikas asserts that he "obtained loans totaling $29,125.00 . . . but has voluntarily and involuntarily repaid DOE in the amount of $31,138.14, 7% more than the loans Shlikas allegedly obtained," and "did not agree to pay DOE any unreasonable and usurious interest, or any penalties, fees, or costs." ECF No. 109 at 11. The DOE asserts that the Court lacks jurisdiction to review this issue, and the administrative decision properly reflects the status of Shlikas's loans. ECF No. 115 at 4.

a.    Jurisdiction

The DOE asserts that this Court is without jurisdiction to issue the declaration that Shlikas seeks because it would be

8

akin to an injunction, for which the government has not waived sovereign immunity. ECF Nos. 110 at 8-9, 115 at 5. Under 20 U.S.C. § 1082(a)(2), the Secretary of the DOE may sue and be sued in any state court of general jurisdiction and federal district courts, except that no injunction "shall be issued against the Secretary." 20 U.S.C. § 1082(a)(2).

When a declaratory judgment action is brought, courts look to what the underlying action would have been if not brought in declaratory judgment form. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959); *In re Lockheed Martin Corp.*, 503 F.3d 351, 359 (4th Cir. 2007). Generally, an action seeking injunctive relief or equitable restitution is brought in equity; "an action for money damages" is a legal action.[12]

The DOE asserts that the declaration sought by Shlikas is coercive relief and therefore equitable. ECF No. 110 at 9. The DOE is incorrect. The clearest traditional analog to this action would be the DOE suing Shlikas for contract damages for failure to pay his loans; Shlikas would have defended by asserting that he had properly paid. Breach of contract is a legal cause of action. *See Atlas Roofing Co. v. Occupational*

---

[12] *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710-13 (1999); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 465 (4th Cir. 1999); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2308.

*Safety & Health Review Comm'n*, 430 U.S. 442, 459 (1977).
Accordingly, Shlikas's claim is within the waiver of §
1082(a)(2).

### b.   Debt Owed by Shlikas

Shlikas asserts that he does not owe any money on his loans
because he paid $31,138.14, which is 7% more than the original
loans of $29,125.00.[13]  ECF No. 109 at 11.  Shlikas's argument
assumes that his debt repayment obligation is simply the
principal plus 7%.  The terms of the promissory notes that
Shlikas signed indicated that he agreed to pay simple interest
on the unpaid balance. *See, e.g.*, ECF No. 90-3 at 38.  Simple
interest is "[i]nterest paid on the principal only and not on
accumulated interest," not just an extra one time charge as
Shlikas appears to believe. *See Black's Law Dictionary,*
Interest(3), Simple Interest (9th ed. 2009).  Further, Shlikas's
undergraduate loans bear an initial interest rate of 8%.[14] *See*
ECF No. 90-3 at 35-39.  These facts show that Shlikas is not
entitled to judgment as a matter of law that his payment of an
additional 7% has fulfilled his loan obligations.

---

[13] The Court notes that payment of an additional 7% on $29,125.00
is $31,163.75, an amount more than Shlikas has claimed to have
paid.

[14] The initial interest rate of his law school loans does not
appear in the record. *Cf.* ECF No. 90-3 at 41 (partial copy of
promissory note).  For collections, the current variable rate
was 6.38% on November 28, 2011, with a maximum rate of 8.25%.
*See id.* at 43-44.

### 2. Due Process Violation

Shlikas next asserts that he is entitled to $5,098.00 in compensatory and $1.00 in nominal damages for the due process violation. ECF No. 109 at 12. In accordance with the Court's prior ruling, *see* ECF No. 98 at 10, the DOE concedes that Shlikas's due process rights were violated, and refunded him $5,098.00 in Treasury offsets and collections. *See* ECF No. 115 at 3-4.

A plaintiff is entitled to an award of nominal damages for violations of the "absolute" right of procedural due process even when he cannot prove actual injury. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *see Carey v. Piphus*, 435 U.S. 247, 266 (1978). The actual injury to Shlikas has been remedied: he has received $5,098.00, which is more than the $2,141.00 that he alleged was taken in violation of due process.[15] *See* ECF No. 18 ¶ 33.

Although the DOE contends that it has overpaid Shlikas and the nominal damages have been included therein, Shlikas is still entitled to a judgment of nominal damages. "*Carey* obligates a court to award nominal damages when a plaintiff establishes the

---

[15] Shlikas acknowledges the Court's statement in its June 1, 2012 memorandum opinion that the remedy for a defective proceeding is a constitutionally correct one. *See* ECF No. 109 at 11-12 (*quoting* ECF No. 98 at 11-12). Shlikas has not contested the sufficiency of the DOE's November 2011 decision and March 2013 denial of reconsideration. *See id.* at 12.

11

violation of his right to procedural due process but cannot prove actual injury." *Farrar*, 506 U.S. at 112. The DOE has conceded that Shlikas is entitled to a nominal damages award because of the violation of due process, but contends that the nominal damages is contained within its $5,198.00 payment. ECF No. 110 at 8. However, the DOE merely repaid to Shlikas money that it had taken by offset and garnishment--regardless of its taking more than $2,141.00 violated due process. Further, as the DOE admits, the repayment simply restored the *status quo ante*. ECF No. 115 at 4. Accordingly, Shlikas has not been compensated for the violation of procedural due process. He will be awarded $1.00 in nominal damages.[16] *See Farrar*, 506 U.S. at 112.

---

[16] The parties agree that $1.00 is the proper measure of nominal damages. *See* ECF Nos. 109 at 12, 115 at 4.

Shlikas also indicates that he will submit a bill of costs if he is awarded judgment. ECF No. 109 at 20. Although the DOE contests some bases for Shlikas's ability to recover costs, *see* ECF Nos. 110 at 10-11, 115 at 7, the Court will not address those issues until Shlikas has submitted his bill of costs. However, the Court reminds Shlikas that many of his incurred expenses are not reimbursable. *See Shlikas v. Sallie Mae, Inc.*, Civ. No. WDQ-06-2106, 2011 WL 5825660 (D. Md. 2011), *aff'd sub nom. Shlikas v. Arrow Fin. Servs.*, 487 F. App'x 68 (4th Cir. 2012), *cert. denied* 2013 WL 1091846 (Mar. 18, 2013) (denying most of Shlikas's requests).

3. Unconstitutionality of the TOP

Finally, Shlikas claims that he is entitled to a declaration that the TOP under 26 U.S.C. § 6402[17] and 31 U.S.C. §§ 3716[18] and 3720A[19] is unconstitutional as applied to him. ECF No. 109 at 13 to 20. The government asserts that Shlikas's arguments are misplaced. ECF No. 115 at 6-7.

Shlikas asserts that the TOP is unconstitutional because he was required to attend in person hearings in places where he had not had minimum contacts, and he did not receive appropriate notice of his right to seek judicial review. ECF No. 109 at 16-20.

Shlikas asserts that he did not have sufficient contacts with Wisconsin, Georgia, Illinois, California, or New York, where the in person hearings are held. ECF No. 109 at 16. The DOE contends that the minimum contacts analysis does not apply to administrative hearings. ECF No. 115 at 6.

Shlikas has not alleged--or presented evidence--that he was actually subjected to the jurisdiction of another state, was

---

[17] Section 6402(d)(1) permits the Secretary of the Treasury to reduce an income tax repayment and give the amount to another federal agency that holds a debt.

[18] Section 3716 provides procedures for agencies to claim administrative offsets.

[19] Section 3720A provides procedures for reducing tax refunds by amount of a debt owed to a federal agency.

13

granted an in person hearing, or traveled to another state for an administrative hearing.[20] *Cf.* ECF No. 18 & Exs. (complaint). The regulations generally provide for only a paper review of offset collections. *See* 34 C.F.R. § 30.24(e). Before an in person hearing is held, the Secretary must grant a request, which is done only if there are issues of credibility or veracity or the documentary evidence is inadequate to resolve the issue.[21] 30 C.F.R. § 30.25(c)-(d).

Shlikas's due process rights have not been implicated; he has not been haled before a tribunal in a foreign state. Further, Shlikas has not provided--and the Court has not found--any authority applying minimum contacts personal jurisdiction analysis in the context of administrative hearings when no evidentiary hearing is required.[22]

Requiring minimum contacts for the exercise of personal jurisdiction "gives a degree of predictability to the legal

---

[20] Although Shlikas "demand[ed] that all claims in this [administrative] action be heard in an Article III Court by an independent, impartial Article III District Court Judge," it appears that he took no further administrative action. *See* ECF No. 18 Ex. 3, 8.

[21] Shlikas has not challenged these regulations or asserted that he met the requirements for an in person hearing. *See* 34 C.F.R. § 30.25(b).

[22] *Cf., e.g., Gandarillas-Zambrana v. Bd. of Immigration Appeals*, 44 F.3d 1251, 1255-1257 (due process analysis for determining location of deportation hearing with testimony); *Chlomos v. U.S. Dep't of Justice*, 516 F.2d 310, 313-14 (3d Cir. 1975) (same).

14

system that allows potential defendants to structure their primary conduct with some minimum assurances to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). To this end, due process requires that "individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'"[23] "Th[e] 'purposeful availment' requirement [of minimum contacts] ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts,' or of the 'unilateral activity of another party or a third person.'"[24]

The concerns underlying the minimum contacts requirement are not present in TOP garnishments. First, Shlikas is not a "defendant" to whom the doctrine applies. *Cf. Burger King*, 471 U.S. at 475. Rather, the need to attend an in person hearing is only triggered upon *Shlikas's* request, and by the Secretary's

---

[23] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (*quoting Shaffer v. Heinter*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)) (alteration in original).

[24] *Burger King*, 471 U.S. at 475 (*quoting Keetson v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

grant.[25] *See* 34 C.F.R. § 30.25. Shlikas has no duty to appear in any far away states: any appearance would be of his own volition. This is the opposite of "random" and "fortuitous" suits that drag a defendant to a state with which he has had no connection. *See Burger King*, 471 U.S. at 475. Instead, the TOP review process gives predictability to debtors about how their claim will be handled. *Cf. World-Wide Volkswagen*, 444 U.S. at 297. Although travelling to one of the hearing sites--in the unlikely event that an in person hearing were granted[26]--would be inconvenient, Shlikas has not shown that holding the hearings outside Maryland was unconstitutional.[27]

Shlikas also asserts that the TOP provisions are unconstitutional as applied to him because the notices did not

---

[25] Shlikas has not asserted that the lack of an automatic in person hearing is itself a violation of due process. When written submissions are an adequate means to resolve the dispute and credibility is not at issue, an in person hearing is generally not required by due process. *See Califano v. Yamasaki*, 442 U.S. 682, 696-97 (1979); *O'Rourke v. Duncan*, No. 4:10-CV-957(CEJ), 2011 WL 1297546, at *6 (E.D. Mo. Mar. 31, 2011) (DOE garnishments); *Norasteh v. U.S. Dep't of Ed.*, No. 10 Civ. 2226(DAB)(JCF), 2011 WL 2473457, at *3, *report & recommendation adopted by* 2011 WL 2493968 (S.D.N.Y. June 22, 2011) (same).

[26] Shlikas has not asserted that he would have been granted an in person hearing under the regulations.

[27] Conversely, Shlikas would not necessarily be able to file suit in Maryland on a claim against the guaranty agencies simply because he lives here. He would have to follow the personal jurisdiction and venue rules. *See* 28 U.S.C. § 1391; *Burger King*, 471 U.S. at 475. This could force him into inconvenient out of state litigation.

inform him of his right to judicial review of the offset. *See* ECF No. 109 at 19. However, Shlikas's right to judicial review is contingent upon his exhaustion of administrative remedies. TOP offsets are subject to the general requirement of exhaustion before judicial review. *See United States v. Beulke*, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012). Further, compliance with TOP statutes and regulations governing offsets satisfies procedural due process, *see, e.g.*, *McCarty v. Astrue*, 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007), and there is no requirement that the initial notice mention judicial review. *See, e.g.*, 31 U.S.C. § 3716(a)(1); 34 C.F.R. § 30.22(b)(3). Although the DOE has conceded some due process violations, Shlikas has not shown that he is entitled to a declaration that the authorizing statutes are unconstitutional as applied to him.

C.    The DOE's Motion

The DOE seeks summary judgment on Shlikas's request for declarations about the status of his loans and the constitution-ality of the TOP. ECF Nos. 110, 115.

1.    Amount Owed on Loans

The DOE asserts that this Court does not have jurisdiction to determine the amount Shlikas owes on his student loans because the DOE's immunity has not been waived for such a suit. ECF No. 115 at 4-5. Shlikas asserts that this Court has

17

jurisdiction to declare that he owes nothing or, alternatively, the amount that he does owe. ECF No. 117 at 8-9.

The DOE asserts that this Court is without jurisdiction to issue the declaration that Shlikas seeks because it would be akin to an injunction, for which the government has not waived sovereign immunity. ECF Nos. 110 at 8-9, 115 at 5. Under 20 U.S.C. § 1082(a)(2), the Secretary of the DOE may sue and be sued in any state court of general jurisdiction and federal district courts, except that no injunction "shall be issued against the Secretary." 20 U.S.C. § 1082(a)(2).

When a declaratory judgment action is brought, courts look to what the underlying action would have been if not brought in declaratory judgment form. *See Beacon Theatres,* 359 U.S. at 504; *In re Lockheed Martin Corp.*, 503 F.3d at 359. If this action had been brought in a traditional form, the clearest analog would be a DOE contract suit against Shlikas for failure to pay his loans; Shlikas could have defended by asserting that he had properly paid. Because breach of contract is a legal cause of action, *see Atlas Roofing Co.* 430 U.S. at 459, Shlikas's claim is within the waiver of § 1082(a)(2).

Nevertheless, the Court will decline to issue the declaration that Shlikas seeks. Whether to issue declaratory judgment "is a matter resting in the sound discretion of the trial judge." *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321,

18

325 (4th Cir. 1937). A court generally exercises that discretion "when it finds that the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) 'will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Aetna Case. & Surety Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (*quoting Quarles*, 29 F.2d at 325). The Court should also consider the efficiency of considering the declaration.[28] *Id.*

Shlikas clearly is not entitled to a declaration that he owes nothing on the student loans. Not only has he fundamentally misconstrued how interest is accrued and paid, he also relies on different interest rates than the loans actually bore. *See supra* Part II.B.1.b. It is his alternative request for a declaration of the exact amount he owes that does not meet the *Quarles* factors for the Court's adjudication.

The DOE undertook an exhaustive look at Shlikas's student loan holdings, wherein he made the same generalized claims of paying all the debt and that the amount was improperly increased. *See* ECF No. 90-3. Shlikas has not moved to amend his complaint for review of the DOE's decision, and it appears that he has not filed a separate suit challenging it.

---

[28] The *Ind-Com Electric* court also stated that the district court should consider federalism and comity, which are irrelevant here. *See Ind-Com Elec.*, 139 F.3d at 422.

Independently deciding Shlikas's loan obligations is the opposite of what *Quarles* contemplates. Rather than "terminat[ing] and afford[ing] relief from the uncertainty, insecurity, and controversy" the Court might complicate this matter by reaching a decision discordant with the DOE's administrative decision. *Quarles*, 92 F.2d at 325. As the DOE notes, Shlikas has a remedy: judicial review of the DOE's determination. *See* ECF No. 110 at 9. This would be significantly more efficient than the Court's undertaking its own full review of the issue, particularly with the discovery that Shlikas appears to contemplate. *See Ind-Com Elec.*, 139 F.3d at 422; ECF No. 117 at 9. The Court sees no useful purpose in deciding the amount of Shlikas's debt when he has now undertaken administrative review that he has not yet judicially challenged.[29] Accordingly, the Court declines to consider Shlikas's request for a declaration of the amount of his debt.

---

[29] The Court notes that review of administrative actions carries a general six-year statute of limitations, and the time for Shlikas to challenge the DOE's determination of his loans has not expired. *See* 28 U.S.C. § 2401(a); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999); *Kelly v. Aman Collections Servs.*, Civ. No. 03-6091(DWF/JSM), 2007 WL 909547, at *4 (D. Minn. Mar. 23, 2007) (student loan offsets)

2. Constitutionality of the TOP

The DOE asserts that Shlikas has failed to show that the TOP statutes are unconstitutional as applied to him. *See* ECF No. 115 at 6.

Shlikas contends that he did not have sufficient contacts with Wisconsin, Georgia, Illinois, California, or New York, where he would have been forced to attend in person hearings. ECF No. 16. The DOE contends that the minimum contacts analysis does not apply to administrative hearings. ECF No. 115 at 6.

Shlikas has not alleged--or presented evidence--that he was forced to travel to another state. *Cf.* ECF No. 18 & Exs. The DOE's TOP regulations generally provide only for a paper review, with an in person hearing only when there are issues of credibility or veracity or the documentary evidence is inadequate to resolve the issue. *See* 30 C.F.R. §§ 30.24(e), 30.25(c)-(d).

Unlike the traditional minimum contacts analysis, Shlikas was not haled before a tribunal in another state and forced to defend himself there. *Cf.*, *Burger King*, 471 U.S. at 474. Shlikas's attendance at an in person hearing is only triggered upon his request, and the Secretary's grant. *See* 34 C.F.R. § 30.25. Shlikas has no duty to appear in any far away states: any obligation to appear would be of his own volition. This is precisely the opposite of "random" and "fortuitous" suits that

drag a defendant to a state with which he has no connection. *See Burger King*, 471 U.S. at 475. Instead, the TOP review regime gives predictability to debtors about how their claim will be handled. *Cf. World-Wide Volkswagen*, 444 U.S. at 297. Although travelling to one of hearing sites--in the unlikely event that an in person hearing would be granted--may be inconvenient, Shlikas has not shown that siting the hearings outside Maryland was unconstitutional.

Shlikas also asserts that the TOP provisions are unconstitutional as applied to him because the notices did not inform him of his right to judicial review of the offset. *See* ECF No. 109 at 19. However, Shlikas's right to judicial review of the offsets is contingent upon his exhaustion of administrative remedies. *See Beulke*, 892 F. Supp. 2d at 1187. The governing statute and regulations do not require initial notification of the availability of judicial review, and they satisfy due process. *See, e.g., McCarty*, 505 F. Supp. 2d at 632. Accordingly, the statutes are not unconstitutional as to Shlikas.

III. Conclusion

For the reasons stated above, Shlikas's motion for an extension of time will be granted. The parties' motions for summary judgment will be granted in part and denied in part.

_____5/14/13_____
Date

William D. Quarles, Jr.
United States District Judge